UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 16-277 (DWF/KMM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Jesse Vang, | |
| Defendant. | |

Jesse Vang, Defendant, *Pro se*.

Amber Brennan, Assistant United States Attorney, United States Attorney's Office, counsel for the Government.

# INTRODUCTION

This matter is before the Court on Defendant Jesse Vang's ("Vang") *pro se* motion for release to home confinement in light of the COVID-19 pandemic.[1] (Doc. Nos. 53, 56

---

[1] On June 4, 2020, Vang filed a self-styled three-page motion for compassionate release, a sentence reduction, or release to home confinement on the grounds that he has been sufficiently rehabilitated. (Doc. No. 53.) This motion did not address any medical issues that make him vulnerable to COVID-19. (*See id.*) On July 20, 2020, Vang filed a supplemental *pro se* motion for compassionate release, this time including medical records, a copy of a request he made to his warden for compassionate release, and a proposed release plan. (Doc. No. 56.) The Court refers to Vang's filings collectively as a single motion and construes it as a request for relief under both the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), and pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) ("Compassionate Release"). As discussed below, the Court finds that Vang's Motion fails under either analysis. While Vang also requested that the Court appoint him a public defender (Doc. No. 53), the Court defers to the recommendation of this District's Compassionate Release Motions Screening Team that Vang's circumstances do not rise to the level such that appointment of counsel is necessary.

(collectively, ("Motion").)  The United States of America (the "Government") opposes Vang's Motion.² (Doc. No. 60 ("Govt. Opp.").)  For the reasons discussed below, the Court respectfully denies Vang's Motion.

## BACKGROUND

On February 28, 2017, Vang pled guilty to one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.  (Doc. No. 34.)  On November 28, 2017, this Court sentenced him to 72 months' imprisonment followed by a 4-year term of supervised release.  (Doc. Nos. 48, 49.)  Vang is currently incarcerated at Milan FCI in Michigan.  BOP Inmate Locator, https://www.bop.gov/inmateloc/ (last accessed August 11, 2020).  According to the Bureau of Prisons ("BOP"), Vang's release date is February 5, 2022.  *Id.*

Vang now moves for release in light of the COVID-19 pandemic.³  In addition to being fully rehabilitated, Vang asserts that he is at increased risk for COVID-19 because the BOP has failed to prevent its spread, it is difficult to practice social distancing in a prison setting, and he has already contracted the virus once.  (*See* Doc. Nos. 53, 56; *see also* Doc. Nos. 56-2, 56-3 (collectively, "Medical Records").)⁴  Vang argues further that he continues to suffer from a loss of smell, that his medical care at Milan FCI is limited,

---

²   The Court also received and considered Vang's response to the Government's opposition.  (Doc. No. 66 ("Reply").)

³   As discussed above, the Court construes Vang's Motion as a request for relief under both the Cares Act and pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

⁴   The record reflects that Vang tested positive for COVID-19 on April 30, 2020. (Doc. No. 56-3 at 3.)

and that his requests to visit an outside hospital have been denied. (Reply at 6-7.) He asserts that Milan FCI is particularly dangerous because multiple prisoners have contracted COVID-19, and several have died.[5] (*See* Doc. No. 56.) Vang asks that the Court grant him compassionate release or release him to home confinement.[6] (Doc. No. 53, 56.)

## DISCUSSION

### I. The CARES Act

The First Step Act ("FSA") was enacted into law on December 21, 2018. *See* Pub. L. No. 115-391, 132 Stat. 5194. As relevant here, the First Step Act revised the provisions for early release to halfway houses or home confinement that had been in place under the Second Chance Act of 2007. *See* 18 U.S.C. § 3624(c)(1).

In its previous form, Section 3624 authorized placement of prisoners into home confinement, providing that the BOP may place a prisoner for 10 percent of the term of his or her imprisonment or six months, whichever is shorter. 18 U.S.C. § 3624(c)(2). Now, as amended, Section 3624 additionally provides that the BOP "shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement

---

[5] As of August 11, 2020, 2 inmates and 1 staff person at Milan FCI were positive for COVID-19, and 3 inmates had died. BOP: COVID-19 Update, https://www.bop.gov/coronavirus/ (last accessed August 11, 2020). Additionally, 95 inmates and 55 staff members have recovered from the virus. *Id.*

[6] Vang asserts that his request for home confinement reflects his desire for Compassionate Release with "home detention as a condition of supervised release." (Reply at 17-18.) Notwithstanding, the Court addresses his request under both the CARES Act and pursuant to Compassionate Release.

3

for the maximum amount of time permitted under this paragraph." *Id.*; FSA § 602. Notably, the FSA did not change 18 U.S.C. § 3624(c)(4), which states that "[n]othing in this subsection shall be construed to limit or restrict the authority of the Director of the [BOP] under section 3621," which in turn provides that the BOP "shall designate the place of the prisoner's imprisonment." 18 U.S.C. §§ 3624(c)(4), 3621(b).

On April 3, 2020, Attorney General William Barr exercised emergency authority under Section 12003(b)(2) of the CARES Act to expand the group of inmates who may be considered for home confinement in light of emergency conditions caused by the COVID-19 virus and its effect on prison populations. The BOP immediately began reviewing all inmates who have COVID-19 risk factors, as described by the Centers for Disease Control and Prevention, starting with the inmates incarcerated at facilities that experienced the first COVID-19 cases (FCI Oakdale, FCI Danbury, FCI Elkton) and continuing with similarly-situated facilities to determine which inmates are suitable candidates for home confinement. BOP Update on COVID-19 & Home Confinement, www.bop.gov/resources/news/20200405_covid19_home_confinement.jsp (last accessed August 11, 2020).

As noted above, the BOP has exclusive authority to determine the placement of prisoners. *See* 18 U.S.C. § 3624(c)(2). Neither the CARES Act nor the FSA alters this authority. *See United States v. James*, Cr. No.15-255 (SRN), 2020 WL 1922568, at *2 (D. Minn. Apr 21, 2020); *United States v. Kluge*, Cr. No. 17-61 (DWF), 2020 WL 209287, at *4 (D. Minn. Jan 14, 2020); *United States v. Roy*, Cr. No. 15-303 (MJD), 2019 WL 6910069, at *1 (D. Minn. Dec. 19, 2019); *Ward v. Bureau of Prisons*, Civ. No. 3:19-

4

770-D-BN, 2019 WL 1930025, at *2 (N.D. Tex. Apr. 2, 2019), *report and recommendation adopted*, Civ. No. 3:19-0770-D, 2019 WL 1924903 (N.D. Tex. Apr. 30, 2019); *see also Xiao v. La Tuna Fed. Corr. Inst.*, Civ. No. EP-19-97-KC, 2019 WL 1472889, at *3 (W.D. Tex. Apr. 3, 2019) ("The Attorney General—and by delegation the BOP—has the exclusive authority and discretion to designate the place of an inmate's confinement.").

Moreover, Courts have consistently held that placement questions are not reviewable. *See*, *e.g.*, 18 U.S.C. § 3621(b); *United States v. Shields*, Cr. No. 12-00410-BLF-1, 2019 WL 2359231, at *5 (N.D. Cal. June 4, 2019) ("The authority to determine [defendant's] placement for the remainder of his sentence is vested solely within the discretion of the BOP."); *United States v. Parish*, Cr. No. 14-166, 2016 WL 7441142, at *1 (E.D. La. Dec. 27, 2016); *Deffenbaugh v. Sullivan*, Cr. No. 5:19-HC-2049-FL, 2019 WL 1779573, at *2 (E.D.N.C. Apr. 23, 2019); *Ward*, 2019 WL 1930025, at *3 (extensive discussion); *Rizzolo v. Puentes*, Civ. No. 119-00290SKOHC, 2019 WL 1229772, at *3 (E.D. Cal. Mar. 15, 2019); *United States v. Perez-Asencio*, Cr. No. 18-3611-H, 2019 WL 626175, at *4 (S.D. Cal. Feb. 14, 2019); *United States v. Burkhart*, Cr. No. 6:03-036-DCR, 2019 WL 615354, at *2 (E.D. Ky. Feb. 13, 2019); *Parsons v. Howard*, Civ. No. 3:18-1406, 2019 WL 469913, at *4 (M.D. Pa. Feb. 6, 2019); *Burg v. Nicklin*, Civ. No. EP-19-24-FM, 2019 WL 369153, at *3-4 (W.D. Tex. Jan. 29, 2019). Furthermore, "[i]t is well established that prisoners do not have a constitutional right to placement in a particular prison facility or place of confinement." *James*, 2020 WL 1922568, at *5

(citing *Khdeer v. Paul*, Civ. No. 18-2112 (ECT/BRT), 2018 WL 6919637, at *5 (D. Minn. Nov. 29, 2018)).

In short, because release to home confinement is a placement decision, the Court finds that it is solely within the BOP's discretion to dictate. *See* 18 U.S.C. § 3624(c). Accordingly, to the extent Vang seeks release to home confinement, the Court respectfully denies his Motion because it lacks the authority to consider his request.

## II. Compassionate Release

Under 18 U.S.C. § 3582(c)(1)(A)(i), a Court may reduce a defendant's term of imprisonment if it finds that "extraordinary and compelling reasons warrant such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the sentencing factors set forth in 18 U.S.C. § 3553(a) "to the extent they are applicable." 18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's policy statement addressing reduction of sentences under § 3582(c)(1)(A) asserts in relevant part that a court may reduce a defendant's term of imprisonment after considering § 3553(a) factors if it finds that: (1) "extraordinary and compelling reasons warrant the reduction;" (2) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g);" and (3) "the reduction is consistent with this policy statement."[7] USSG § 1B1.13

---

[7] While the policy statement refers only to motions filed by the BOP Director, the Court construes the statutory command pursuant to § 3582(c)(1)(A)(ii) that any sentence reduction be "consistent with applicable policy statements issued by the Sentencing Commission" to mean that the Statement also applies to motions filed by defendants.

6

("Statement").  The Statement includes an application note that defines "extraordinary and compelling reasons" as (1) medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover, (2) age-related deterioration, (3) family circumstances, and (4) other extraordinary and compelling reasons that exist either separately or in combination with the previously described categories.[8]  *Id.*

Notwithstanding, a defendant may move for a sentence reduction only after complying with an exhaustion requirement.  18 U.S.C. § 3582(c)(1)(A).  Specifically, a defendant may move for a sentence reduction "[1] after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or [2] the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ."[9]  *Id.*

The record reflects that Vang requested compassionate release from the warden at Milan FCI on June 17, 2020.[10]  (Doc. No. 56-6.)  The record does not indicate a response

---

[8]  The Statement cites examples of qualifying medical conditions including metastatic solid-tumor cancer, amyotrophic lateral sclerosis, end-stage organ disease, and advanced dementia.  (Statement.)

[9]  While judicially created exhaustion requirements may sometimes be excused, no exception applies to a statutory command such as that presented in Section 3582(c)(1)(A).  *See Ross v. Blake*, 136 S. Ct. 1850, 1855-57 (2016) (rejecting judicially created "special circumstances" exception to the exhaustion requirement unambiguously stated in the Prison Litigation Reform Act of 1995).

[10]  The record also reflects that Vang emailed the warden on or about April 15, 2020 requesting release and followed up on May 6, 2020 with an inquiry about when he may receive a response.  (Doc. No. 56-6.)

7

from the warden. Because more than 30 days have passed since Vang's request, the Court finds that his Motion is properly before the Court.

After a careful review of Vang's Motion and exhibits, including his Medical Records, the Court finds that Vang's circumstances do not meet the demanding standard for compassionate release. The Court understands that Vang feels susceptible to COVID-19, particularly due to the conditions at Milan FCI, and because he has already contracted it once.[11] Notwithstanding, this Court agrees with others that a generalized fear is insufficiently extraordinary or compelling to warrant immediate release. *See, e.g.*, *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *United States v. Eberhart*, 2020 WL 1450745, at *2 (N.D. Cal. Mar. 25, 2020). Vang cites no underlying medical condition cited by the Centers for Disease Control and Prevention ("CDC") that puts him at risk of severe infection from COVID-19. *See* CDC, People of Any Age with Underlying Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed August 11, 2020).

The Statement clearly defines "extraordinary and compelling" medical conditions as those "which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover." While the Court is sympathetic to Vang having suffered from the virus approximately 3 months ago, and that he continues to suffer from a loss of smell, the CDC does not include prior infection as a condition that increases his risk for severe infection if Vang were to contract the virus again, nor does

---

[11]    The Court also recognizes Vang's concern over his continued loss of smell.

Vang present any other condition that makes him uniquely vulnerable.[12]  Moreover, the fact that Vang appears to have recovered from the virus indicates that the BOP was able to properly care for him while he was ill.  The Court notes that the BOP is also taking active steps to mitigate the spread of the virus.[13]

In short, while the Court understands the gravity of the COVID-19 pandemic and recognizes Vang's concerns, the Court finds that the circumstances do not present an extraordinary and compelling reason to warrant release.  *United States v. Lemon*, Doc. No. 93 at 5, 08-cr-246 (DSD) (D. Minn. Jun. 24, 2020) (denying compassionate release to prisoner with prior COVID-19 infection because his condition did not satisfy the criterion under the Statement).  Accordingly, the Court respectfully denies Vang's Motion.[14]

---

[12]  *See* CDC, People of Any Age with Underlying Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed August 11, 2020).  Moreover, Vang's Medical Records do not indicate any other condition that makes him susceptible to severe infection.  (*See generally*, Medical Records.)

[13]  Effective March 13, 2020, the BOP required all of its facilities to implement a set of measures "to mitigate the spread of COVID-19" and "to ensure the continued effective operation of the federal prison system."  *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan, https://www.bop.gov/resources/news/20200313_covid-19.jsp (last accessed August 11, 2020).  Those steps include limiting visits and internal movement, increased hygiene measures, and screening of both staff and inmates.  (*Id.*)  Current measures also include a 14-day isolation period and limited group gatherings.  *See* Federal Bureau of Prisons, BOP COVID-19 Action Plan Phase V, https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp (last accessed August 11, 2020).

[14]  Because Vang fails to present an "extraordinary and compelling" reason to warrant release, the Court need not consider the § 3553(a) factors or whether he poses a danger to the safety of any other person or to the community.  *See* 18 U.S.C. § 3582(c)(1)(A); Statement.  This being said, the Court commends Vang for his commitment to rehabilitation, and encourages him to keep up the good work.

## CONCLUSION

For the reasons set forth above, the Court finds that it lacks authority to consider Vang's Motion under the CARES Act because the decision of where to place a defendant is solely within the BOP's discretion to dictate. The Court also finds that Vang is ineligible for Compassionate Release because he has not demonstrated an extraordinary and compelling reason to warrant release.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant Jess Vang's *pro se* Motion for Release (Doc. Nos. [53], [56]) is respectfully **DENIED**.

Date:  August 13, 2020                                    s/Donovan W. Frank
                                                         DONOVAN W. FRANK
                                                         United States District Judge